1  James R. Patterson, State Bar No. 211102
   Email: jpatterson@hpolaw.com
2  Cary A. Kinkead, State Bar No. 216545
   Email: ckinkead@hpolaw.com
3  HARRISON PATTERSON O'CONNOR & KINKEAD LLP
   402 West Broadway, 29th Floor
4  San Diego, CA 92101
   Telephone: (619) 756-6990
5  Facsimile: (619) 756-6991

6  Attorneys For: Plaintiff and the Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| ROBERT FLETCHER, on behalf of himself and all others similarly situated, | CASE NO.: 08-CV-2275 DMS (WMc) |
|---|---|
| Plaintiff, | **PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO REMAND TO STATE COURT** |
| vs. | |
| THE TORO COMPANY, a Delaware Corporation, and DOES 1-100, inclusive | Date: January 30, 2009
Time: 1:30 p.m.
Courtroom: 10 |
| Defendants. | *Complaint filed: November 6, 2008* |

## TABLE OF CONTENTS

I. REPLY ..................................................................................................................... 1

A. Toro Has The Burden of Proof .................................................................... 2

B. Where A Plaintiff Expressly Alleges His "Claims" Do Not Exceed The Jurisdictional Limit Under CAFA, The 9th Circuit Requires The Defendant To Prove "To A Legal Certainty" That The Amount In Controversy Exceeds $5 Million For Federal Jurisdiction ...................................................... 3

1. Lowdermilk v. U.S. Bank ............................................................................. 3

2. Guglielmino v. McKee Foods Corp. ............................................................ 4

3. Green v. Staples ........................................................................................... 5

C. Toro's Notice of Removal Does Not Satisfy Any Standard Of Proof, And Certainly Does Not Prove To A "Legal Certainty" That The Amount In Controversy Exceeds $5 Million .................................................................. 6

1. Toro Has Inflated the Number of Class Members and Their Hourly Rate ............................................................................................................. 6

2. Toro's Calculations of Potential Damages Associated With Fletcher's Claims For Missed Rest And Meal Periods Are Patently Flawed .............. 7

3. Toro Improperly Assumes That Each Class Member Worked More Than Forty Pay Periods During Which He or She Received an Inaccurate Wage Statement .......................................................................................... 9

4. Toro Improperly Assumes That Each Class Member, Including Current Employees, Would Be Entitled to a Full 30-Day Waiting Time Penalty .... 9

5. Toro Failed To Consider Any Other Claims In Connection With Its Notice of Removal. ................................................................................... 10

6. The Potential for Substantial Attorney Fees Does Not Prove the Amount in Controversy Exceeds $5 Million ......................................................... 10

D. Toro's Attempt To Remove The Case Without Any Objectively Reasonable Basis Justifies An Award Of All Costs And Fees Incurred By Fletcher ..... 11

1. Applicable Law ......................................................................................... 12

2. Application To The Instant Matter ............................................................ 13

3. Fletcher Is Entitled To Fees And Costs In The Amount Of $68,433.75 ... 14

II. CONCLUSION ..................................................................................................... 15

HARRISON PATTERSON O'CONNOR & KINKEAD LLP
402 West Broadway
29th Floor
San Diego, CA 92101

-i-

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
MOTION TO REMAND TO STATE COURT                    08-CV-2275 DMS (WMc)

# TABLE OF AUTHORITIES

**Cases**

*Abrego v. The Dow Chemical Co.*
  443 F.3d 676 (9th Cir. 2006) .................................................................................. 2

*Alicea v. Circuit City Stores, Inc.*
  534 F. Supp. 2d 432 (2008) ............................................................................ 12, 13

*Brinker Restaurant Corp. v. Superior Court*
  (2008) 165 Cal. App. 4th 25 ......................................................................... 1, 14

Bufil v. Dollar Financial
  (2008) 162 Cal.App.4th 1193 .............................................................................. 14

*Cicairos v. Summit Logistics, Inc.*
  (2005) 133 Cal.App.4th 949 ................................................................................ 14

*Guglielmino v. McKee Foods Corp.*
  506 F.3d 696 (9th Cir. 2007) ........................................................................ passim

Husko v. Gearly Electric, Inc.
  316 F. Supp. 2d 664 (2004) ..................................................................... 12, 13, 14

Lowdermilk v. U.S. Bank
  479 F.3d 994 (9th Cir. March 2, 2007) ............................................................ passim

Martin v. Franklin Capital Corp.
  546 U.S. 132 (2005) ............................................................................................ 12

**Statutes**

Labor Code section 226 ................................................................................................. 9

28 U.S.C. section 1447(c) ........................................................................... 2, 11, 12, 13

HARRISON PATTERSON O'CONNOR & KINKEAD LLP
402 West Broadway
29th Floor
San Diego, CA 92101

-ii-

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
MOTION TO REMAND TO STATE COURT                                   08-CV-2275 DMS (WMC)

## I. REPLY

Toro's opposition fails to address a single flaw in Toro's calculations and assumptions highlighted in Fletcher's motion to remand. Toro instead argues that it should be excused since it inexplicably considered only one of its California locations and ignored certain of Fletcher's claims in its Notice of Removal. This argument underscores Toro's fundamental failure to recognize that it has the sole burden of establishing the amount in controversy under CAFA, whatever the applicable standard of proof.

Toro also misstates and misapplies the appropriate standard of proof by largely ignoring the 9th Circuit's binding decision in *Lowdermilk*, which mandates that a defendant seeking federal jurisdiction under CAFA must prove to a "legal certainty" that the amount in controversy exceeds $5 million where the plaintiff affirmatively limits "claims" to less than $5 million in the operative complaint. Toro instead relies on *Gugliemino*, a non-CAFA case, which distinguishes *Lowedermilk* on the grounds that the plaintiff in *Gugliemino* only limited "damages," which did not include attorney fees, whereas the plaintiff in *Lowedermilk* limited all "claims." If *Lowdermilk* was the knife to Toro's heart, *Gugliemino* is a bullet to its head. *Gugliemino* leaves no doubt that the relevant inquiry is whether the plaintiff has attempted to limit "claims," or merely "damages" to remain under the jurisdictional limit. Fletcher specifically pleads that the "Class Members' claims as a whole do not exceed the jurisdictional limit of $5,000,000."

Toro's Notice of Removal was brought in bad faith in a desperate attempt to file a quick motion to strike Fletcher's class allegations based on its perceived advantage of avoiding the California Supreme Court's current review of the appropriate standard for California employers to "provide" rest and meal periods, and whether these types of claims are appropriate for class treatment. *See Brinker Restaurant Corp. v. Superior Court of San Diego County, California Supreme Court Case No. S166350.* Toro removed Fletcher's case and filed the motion to strike, and then refused to allow Fletcher's motion to remand to be heard first. These tactics have resulted in a massive waste of Fletcher's and the Court's resources. Because Toro's attempted removal was entirely unreasonable, and Toro has failed to satisfy any standard of proof, much less prove to a "legal certainty" that the amount in controversy exceeds $5 million, Fletcher is

entitled to an award of just costs and attorney fees incurred as a result of the improper removal. 28 U.S.C.S. § 1447(c).

### A. <u>Toro Has The Burden of Proof</u>

Toro has the <u>sole</u> burden of establishing that federal jurisdiction is proper. *Gaus v. Miles, Inc. v. Miles, Inc.*, 980 F.2d 662 (9th Cir. 1992) (affirming that courts must "strictly construe the removal statute against removal jurisdiction); *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction"). The folly of Toro's opposition is summed up in a single statement criticizing Fletcher: "perhaps most significant, Plaintiff conveniently ignores that Defendant's Notice of Removal does not account for the most significant damages sought by Plaintiff's Complaint: (1) failure to pay overtime compensation (third cause of action), (2) failure to reimburse expenses (fifth cause of action), and (3) attorney's fees." Opposition at 1:14-18. That Toro inexplicably failed to include potential damages associated with these claims in its Notice of Removal has absolutely no bearing on Fletcher's right to remand the case.

Likewise, it was Toro's decision to limit its analysis to one location, identifying the potential putative class as the 140 people at the El Cajon location. To the extent Toro could have identified other locations where it employs assembly-line operators, it should have done so. The reality is that Toro only has one assembly-line in California. *See* RJN Exh. 1, Toro 10K Annual Report at p. 18 (identifying two California locations, one manufacturing plant (El Cajon, CA), and one office and testing facility (Riverside, CA)).[1] Toro's bald assertion that it maintains "several" manufacturing locations is another bad faith attempt to mislead the court as to the potential size of the putative class. *See* Opposition at 1:26-2:1 ("the potential putative class of 140 people identified in Defendant's Notice is based on one location (El Cajon) alone. It does not include Defendant's other California locations."); 11:4-6 ("this group of 140 [class members] does not include others at Defendant's various other California locations"); and 16:22-23

---

[1] Toro curiously does not identify this action as a significant litigation involving the company in its 10K annual filing, which one would expect to see if Toro truly believed the amount in controversy exceeds $5 million. *See* RJN Exh. 1, Toro 2008 10K Annual Report at p.18-19.

-2-
PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
MOTION TO REMAND TO STATE COURT                                  08-CV-2275 DMS (WMC)

HARRISON PATTERSON O'CONNOR & KINKEAD LLP
402 West Broadway
29th Floor
San Diego, CA 92101

(claiming that Defendant conservatively "calculated potential damages for just one of Defendant's several facilities in the state").

Toro's criticism of Fletcher for "misstating facts" and "limiting the putative class to 140" is otherwise puzzling. These are the numbers Toro identified in the Notice of Removal and used in its own calculations of the amount in controversy. Notice of Removal at ¶¶11-14.

**B. Where A Plaintiff Expressly Alleges His "Claims" Do Not Exceed The Jurisdictional Limit Under CAFA, The 9th Circuit Requires The Defendant To Prove "To A Legal Certainty" That The Amount In Controversy Exceeds $5 Million For Federal Jurisdiction**

*1. Lowdermilk v. U.S. Bank*

The Ninth Circuit's holding in *Lowdermilk* is directly on point and largely ignored by Toro. The plaintiff in *Lowdermilk* brought claims for the defendant's alleged failure to pay all wages owed upon termination as well as penalties, costs, attorney fees, and interest. 479 F.3d at 996. The plaintiff alleged in the caption and jurisdictional sections of her complaint that "[t]he aggregate total of the <u>claims</u> pled herein do not exceed five million dollars." *Id.* (emphasis added). Although in her prayer for relief she requested "damages" less than $5 million and <u>also</u> asked for attorney fees. *Id.* at 997-998, and 1003-1004. Despite the seeming contradiction, the court nevertheless concluded that she had sufficiently alleged her claims did not exceed $5 million. *Id.* at 1000. The court held that "where the plaintiff has pled an amount in controversy less than $5,000,000, the party seeking removal must prove with <u>legal certainty</u> that CAFA's jurisdictional amount is met." *Id.* at 999-1000.

In his dissenting opinion, Justice Kleinfeld expresses concern that the complaint was poorly drafted and contradicted itself about the amount in controversy. *Id.* at 1003. Justice Kleinfeld notes the contradiction between the "jurisdiction and venue" section of the complaint and its prayer for relief:

> In paragraph 4 [of the complaint], under a heading "JURISDICTION AND VENUE," it says "[t]he aggregate total of the claims pled herein do not exceed five million dollars." <u>So far, clear as a bell, and an easy affirmance of the remand</u> [to state court]. But the prayer for relief contradicts the complaint's previous statements. The prayer first asks for an award "in total less than five million dollars" for the unpaid wages and penalties. Then ... asks that the court "award plaintiff's attorney fees."

-3-
PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
MOTION TO REMAND TO STATE COURT                        08-CV-2275 DMS (WMC)

1  *Id.* at 1003-1004. (emphasis added).

2  The majority opinion also recognized the contradictory language found in the prayer: "Whether the amount in controversy is met here is a more difficult question. In her complaint, Plaintiff claimed only damages "in total, less than five million dollars," although she <u>also</u> asked for attorneys' fees, which Oregon law authorizes." *Lowdermilk*, 479 F.3d at 997, and 1003-1004 (emphasis added). But in the end, the *Lowdermilk* majority looked past the ambiguity in the prayer and applied the "legal certainty" standard. *Id.*

Fletcher has expressly limited the aggregate of all <u>claims</u> to less than $5 million. Fletcher further avoids the uncertainty surrounding the exclusion of fees that was present in the prayer for relief in *Lowdermilk*, which was a hurdle for the Ninth Circuit, and particularly for Justice Kleinfeld in dissent. In the words of Justice Kleinfeld, Fletcher's limitation of claims in his complaint is "clear as a bell" and an "easy remand" to state court.

### 2. *Guglielmino v. McKee Foods Corp.*

The plaintiffs in *Guglielmino* alleged in the "Jurisdiction and Venue" section of their complaint that "[t]he <u>damages</u> to each Plaintiff are less than $75,000." 506 F.3d 696, 697 (9th Cir. 2007) (emphasis added). The Ninth Circuit affirmed its earlier decision in *Lowdermilk* requiring the party seeking removal under CAFA to prove to a "legal certainty" that the amount in controversy exceeds $5 million where the plaintiff affirmatively alleges the amount in controversy is less than the jurisdictional minimum. *Id.* at 699-700 (*citing Lowdermilk*, 479 F.3d at 1000).

Rather than departing from its holding in *Lowdermilk*, the court distinguished the allegations in the *Guglielmino* complaint on the grounds that the *Lowdermilk* plaintiff expressly limited all "<u>claims</u>" to less than $5 million, whereas the *Guglielmino* plaintiff only limited "<u>damages</u>" to less than the jurisdictional threshold. *Id.* at 700 and n.4. In clarifying this distinction, the *Guglielmino* court recognized Judge Kleinfeld's dissent in *Lowedermilk* voicing his concern that the *Lowdermilk* plaintiff's prayer contradicted her allegations in the caption and jurisdiction sections of her complaint. *Id.* (citing *Lowdermilk*, 479 F.3d at 1003-1004). The *Guglielmino* court explained that the majority in *Lowdermilk* obviously read the caption and

-4-
PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
MOTION TO REMAND TO STATE COURT                                 08-CV-2275 DMS (WMC)

jurisdiction sections of the complaint, and their reference to "aggregate total of claims," to include *everything* sought, including attorneys' fees *despite* the seemingly contradictory request in the prayer. *Id.*

The *Guglielmino* court then distinguished *Lowdermilk*: "In contrast, here the complaint does not use the word "<u>claim</u>" but instead references only "<u>damages</u> and injunctive relief," within neither of which attorneys' fees comfortably fit. " *Id.* The important distinction for the *Guglielmino* court was that the *Lowdermilk* plaintiff limited all "claims," which would include attorney fees, whereas the *Guglielmino* plaintiffs only limited "damages," which would not include attorney fees. Toro admits this in its opposition: Opposition at 5:19-21.

To the extent Toro contends that *Guglielmino* requires a plaintiff to include a limitation in the prayer before the "legal certainty" standard applies, Toro is mistaken. The secondary distinction that the *Guglielmino* plaintiffs did not repeat the limitation on "damages" in their prayer for relief, wherein they requested attorney fees, accounting of monies, payment of back taxes, penalties, and benefits in addition to "damages," merely created further uncertainty surrounding the amount in controversy in that case. The *Guglielmino* court certainly did not rely on the *Lowdermilk* plaintiff's request in her prayer for an award of up to $5 million in damages <u>plus</u> attorney fees. If anything, the *Lowdermilk* prayer concerned the *Guglielmino* court, as evidenced by its clarification that the *Lowdermilk* majority must have construed the plaintiff's broader limitation on "all claims" in other sections of her complaint to encompass attorney fees despite the contradictory language in the prayer. *See Guglielmino* 506 F.3d at 700 and n.4.

The controlling distinction for the *Guglielmino* court was whether the plaintiff attempted to limit "all claims" or merely "damages." Because Fletcher has specifically alleged that "the Class Members <u>claims</u> as a whole do not exceed the jurisdictional limit of $5,000,000" the "legal certainty" standard applies. Complaint at 4:1-5.

### 3. *Green v. Staples*

The Central District recently construed and applied the Ninth Circuit standard supplied by *Lowdermilk* and affirmed in *Guglielmino*. *Green v. Staples*, 2008 U.S. Dist LEXIS 104364 (C.D. Cal. December 10, 2008) at *1-2. The plaintiff in *Green* filed a class action asserting the

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
MOTION TO REMAND TO STATE COURT       08-CV-2275 DMS (WMC)

very same claims as Fletcher, and alleging that "the aggregate claim is under the five million dollar threshold of the Class Action Fairness act." *Id.* at *2. The *Green* court relied on the footnote in *Guglielmino* distinguishing *Lowdermilk* on the grounds that the *Lowdermilk* plaintiff limited "the aggregate of claims" to less than $5 million, whereas the *Guglielmino* plaintiffs only limited "damages and injunctive relief:"

> Thus, the important distinction was the fact that in *Lowdermilk* the plaintiff alleged that all "claims" amounted to less than the jurisdictional minimum, not just "damages."

*Id.* at *7-8.

Because the plaintiff alleged in the jurisdictional section of her complaint that "the aggregate <u>claim</u> is under the five million dollar threshold of the Class Action Fairness Act of 2005," the *Green* court applied the "legal certainty standard:"

> Because Plaintiff has chosen to limit its "aggregate claim" to less than $5 million, which includes all possible forms of relief, and not just damages, the Court finds that Plaintiff has pled a sufficiently specific amount in controversy that is less than the jurisdictional minimum. Thus, *Lowdermilk* controls and the legal certainty standard applies.

*Id.* at *8.

Importantly, the plaintiff in *Green* did <u>not</u> include any limitation on damages or claims in her prayer for relief. *See* RJN Exh. 2, Complaint in *Green v. Staples, Inc.*[2] This simply was not important to the court in considering whether the plaintiff had sufficiently limited her claims to invoke the "legal certainty" standard for removal.

Based on the Ninth Circuit standard found in *Lowdermilk*, *Guglielmino*, and *Green*, Toro was obligated, and failed to prove to a "legal certainty" that the amount in controversy exceeds $5 million.

C. **Toro's Notice of Removal Does Not Satisfy Any Standard Of Proof, And Certainly Does Not Prove To A "Legal Certainty" That The Amount In Controversy Exceeds $5 Million**

*1. Toro Has Inflated the Number of Class Members and Their Hourly Rate*

---

[2] Notably, the *Green* plaintiff sought almost identical relief in her prayer as sought by Fletcher. RJN, Exh. 2 at 21:12-23 – 23:16.

-6-
PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
MOTION TO REMAND TO STATE COURT                                    08-CV-2275 DMS (WMC)

Toro assumes there are 140 class members at issue, and that their average hourly rate is $14.85. But it is far from clear that there are 140 class members since Toro has refused to identify the number of assembly-line operators it employs. Instead, Toro identifies employees that were "involved in the manufacturing operations and/or performed work on the assembly line" in arriving at 140 class members. Notice of Removal at ¶11. This presumably includes employees that were "involved in the manufacturing operations" but were not assembly-line operators, and do not fall under the class definition in Fletcher's complaint. The non-class members that were "involved in the manufacturing operations" likely are also higher wage earners, and Toro's inclusion of their hourly rates has skewed the calculations. For example, Fletcher's hourly rate is $10 and he is an experienced assembly-line operator.

The *Lowdermilk* court criticized the defendant's failure to appropriately determine the class size: "If Defendant, who is the only party with access to its employment records cannot more accurately approximate the class size, Plaintiff cannot be expected to plead her case with any more specificity than she did." *Id.* at 1002, and 1001. Toro's assumptions that there are 140 class members with an average hourly rate of $14.68 suffer from the very same defects, and each of its damages calculations must be disregarded since they each rely on these false assumptions.

### 2. *Toro's Calculations of Potential Damages Associated With Fletcher's Claims For Missed Rest And Meal Periods Are Patently Flawed*

Toro attempts to prove the amount in controversy exceeds $5 million based on Fletcher's claim for missed rest and meal breaks. Notice of Removal at ¶12. In *Green*, the defendant alleged that the putative class consisted of 550 employees, that the average pay was $16.68 per hour, and that, based on the Defendants review of the records, the number of work weeks at issue was 78,256.72. *Green*, 2008 U.S. Dist. LEXIS at *9. Based on the plaintiff's discovery responses indicating that she missed six meal periods per week and five rest periods per week, defendant asserted that, for purposes of determining the amount in controversy, the court could assume the other members of the class missed the same number of meal and rest periods. *Id.* at *10. The defendant proceeded to multiply 11 missed meal/rest breaks per week x 78,256.72 weeks x $16.68 per hour, which resulted in $14,358,542 in controversy. *Id.* at *10.

Despite this analysis, which far surpasses anything Toro has provided, the *Green* court refused defendant's purported figures noting a "conspicuous lack of evidentiary support." *Id.* at *10. The court took issue with the defendant's assumption that all class members missed the same amount of rest and meal periods that the named plaintiff claimed to have missed. *Id.* The court further took issue with the defendant's calculation of the number of work weeks and shifts involved. The court criticized defendants "simple declaration" stating that the number of work weeks was no less than 78,256.72, which did not provide any explanation of how defendant reached this number. *Id.* at 12-13.

Toro's false assumptions and miscalculations are far worse that the insufficient evidence supplied by the defendant in *Green*. Toro does not even attempt to calculate the number of shifts or work weeks at issue. Instead, Toro inexplicably assumes that <u>each</u> of the claimed 140 individual class members worked <u>each</u> of the claimed 260 working days per year, for all four years of the class period, and a total of 1040 shifts.[3] Toro knows that each of the 140 potential class members did not work 1040 shifts. Indeed, it is likely that <u>none</u> of the 140 class members worked 1040 shifts during the four year class period. To do so, a class member would have needed to work five days a week, 52 weeks per year, for all four years, without a <u>single</u> vacation or sick day. Toro also allocates 1040 shifts to class members that were not even employed for the entire four year class period, including those that worked for a relatively short period of time, such as a month, or even a day. Toro's assumption that each class member worked 1040 shifts is blatantly false.

Each class member would only be entitled to compensation for missed rest and meal periods during the shifts they actually worked for Toro. The defendant in *Green* at least made an attempt to calculate the number of work weeks and shifts at issue. Toro makes no attempt whatsoever. The true number of shifts at issue is readily available from Toro's own records, but Toro refuses to provide this information since it would likely prove that the amount in controversy does <u>not</u> exceed $5 million.

---

[3] Toro's actual calculation is as follows ($14.85 per hour (x) 260 working days per year (x) 4 years) (x) (140 Class Members as defined in the Complaint) = $2,162,160 (for alleged missed meal breaks (+) $2,162,160 (for alleged missed rest breaks) = $4,324,320). Notice of Removal ¶12.

### 3. Toro Improperly Assumes That Each Class Member Worked More Than <u>Forty</u> Pay Periods During Which He or She Received an Inaccurate Wage Statement

Toro improperly assumes that each of the purported 140 class members would be entitled to the maximum $4,000 penalty for Toro's failure to provide accurate wage statements. Notice of Removal at ¶13. Labor Code Section 226 provides that employees are entitled to a $100 penalty for <u>each</u> inaccurate wage statement up to a maximum of $4,000. Accordingly, Toro's calculation assumes that each and every class member worked at least 40 pay periods, and received at least 40 inaccurate wage statements. Plaintiff does not allege this in his complaint. A class member that worked only 10 pay periods would, at most, be entitled to $1,000, and not the $4,000 maximum allocated by Toro. Again, Toro has the actual records showing the number of pay periods worked by each class member, but refuses to provide this information.

### 4. Toro Improperly Assumes That Each Class Member, Including Current Employees, Would Be Entitled to a Full 30-Day Waiting Time Penalty

The *Lowdermilk* defendant examined company records and determined that 7,571 employees left defendant's employment during the class period, and then assumed each employee would be entitled to the maximum 30 day waiting time penalty, which yielded damages of more than $13 million. 479 F.3d at 1000. The *Lowdermilk* court criticized the defendant for providing "thin" support as to how it arrived at these numbers. *Id.* at 1001. Specifically, the Court took issue with the determination that 7,571 employees were terminated during the class period, and the failure to consider the time sheets at issue to determine whether each would be entitled to the full 30 day waiting time penalty. *Id.* at 1001. The court concluded that while it was likely that some of the 7,571 former employees identified by defendant would be entitled to waiting time penalties, it was far from clear that 2,874, the number necessary to break the $5 million threshold, would qualify. *Id.*

Conversely, Toro has failed to even identify the number of former employees that would be entitled to receive <u>any</u> waiting time penalty. Toro merely multiplies the entire 140 person class by the maximum 30 day penalty for each class member. Toro has made no attempt whatsoever to identify class members that were terminated during the class period, and thus

-9-
PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
MOTION TO REMAND TO STATE COURT                              08-CV-2275 DMS (WMC)

potentially entitled to waiting time penalties. The *Green* court addressed this same error in summarily rejecting the defendant's calculation of waiting time penalties:

> First, §203 only applies to employees who have been terminated, yet Defendant does not indicate how many employees they have included in the class have actually been terminated. The 550 number is the same that Defendant uses for the purposes of calculating the missed meal and rest breaks; nowhere does the Defendant provide evidence that all 550 purported members of the class have been terminated.

2008 U.S. Dist. Lexis at *14.

Toro's bald contention that each of the 140 class members, including its <u>current</u> employees, would be entitled to a 30 day waiting time penalty is a blatant misrepresentation.

### 5. *Toro Failed To Consider Any Other Claims In Connection With Its Notice of Removal.*

Toro contends that the court should consider Fletcher's other causes of action to determine the amount in controversy. Opposition at 1:14-18. But Toro failed to address any of these additional claims in its Notice of Removal, and fails to provide any evidence upon which the Court could estimate damages associated with any of Fletcher's remaining claims. The *Green* court addressed this very situation in refusing to consider other claims alleged in the complaint for which the defendant provided no estimate or evidence as to the amount of damages that could be recovered. 2008 U.S. Dist. LEXIS at n.3.

### 6. *The Potential for Substantial Attorney Fees Does Not Prove the Amount in Controversy Exceeds $5 Million*

The *Green* court specifically considered that a seven figure attorney fee was not unreasonable for these types of wage and hour class actions. 2008 U.S. Dist. LEXIS at *14-15. But still refused to find the amount in controversy exceeded $5 million because of the underlying uncertainty surrounding the other claims. *Id.* at 14-15. The *Lowdermilk* court confirmed that attorney fees should be part of the analysis, but likewise refused to find this component sufficient to prove to a "legal certainty" that the amount in controversy exceeded $5 million due to the defendant's failure to prove the amount at issue with respect to the underlying claims. 479 F.3d 1002. Just as in *Lowdermilk* and *Green*, the potential for significant fees in this case does not

satisfy Toro's burden to prove to a "legal certainty" that the amount in controversy exceeds $5 million.

In sum, Toro's Notice of Removal and evidence submitted in connection with its opposition to Fletcher's Motion to Remand falls well short of satisfying its burden of proving to a "legal certainty" that the amount in controversy exceeds the jurisdictional threshold for CAFA. The *Lowdermilk* court criticized the defendant's failure to properly vet and certify its proposed figures, or consider the underlying time sheet available to defendant in ultimately concluding that defendant failed to carry its burden of proof to establish the amount in controversy exceeded $5 million:

> In short, Defendant has left us to speculate as to the size of the class, the amount of unpaid wages owed due to the rounding policy, and whether or not members of the class qualify for penalty wages; such speculation does not meet the "legal certainty" standard … [w]e cannot base our jurisdiction on Defendant's speculation and conjecture. Even if we include attorney's fees in the calculation, Defendant is no closer to carrying its burden because we simply have no basis for estimating the claims of the individual class members. *Id.* at 1002.

Toro's complete failure to produce credible evidence or figures would not satisfy the "preponderance of the evidence standard" and may not even raise a "reasonable doubt" that the amount in controversy exceeds $5 million. Toro is in possession of the relevant information and employee records at issue, but chooses to hide this information from the court and Fletcher, and instead sets forth misrepresented figures and, indeed, outright lies.

**D. Toro's Attempt To Remove The Case Without Any Objectively Reasonable Basis Justifies An Award Of All Costs And Fees Incurred By Fletcher**

Pursuant to section 1447(c), Fletcher is entitled to all of his fees and costs incurred as a result of Toro's unreasonable removal. In addition to fees and costs associated with this motion to remand, Fletcher is entitled to recover his fees and costs incurred as a result of having to oppose Toro's motion to strike, which is currently scheduled to be heard at the same time as this motion. Remarkably, Toro refused Fletcher's request that Toro stipulate to continue the hearing date and briefing schedule on the motion to strike until after this Court had ruled on the motion to remand. As noted below, the case law is clear that Fletcher is entitled to recover <u>all</u> of its fees

and costs resulting from Toro's unreasonable removal, including those associated with Toro's motion to strike.

### 1. *Applicable Law*

Section 1447(c) provides that an "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. section 1447(c). The Supreme Court recently clarified the standard governing the application of section 1447(c) and held that the test is whether the removing party "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). In considering the award of fees, courts "should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

There is clear precedent in support of a finding that Toro's removal was not objectively reasonable. In *Alicea v. Circuit City Stores, Inc.*, 534 F. Supp. 2d 432 (2008), the plaintiff filed a consumer-related class action in state court under CAFA. The defendant removed the case to federal court on the basis that the claims exceeded the $5 million jurisdictional limit. On remand, the court found that defendant had failed to satisfy the $5 million amount-in-controversy requirement. *Id.* Ultimately, the court granted fees and costs to the plaintiff pursuant to section 1447(c) after finding that the removal was unreasonable because, had the defendant conducted a reasonable investigation of the facts, it would have been apparent, under well-settled law, that the amount in controversy did not exceed $5 million. *Id.* at 436. In justification for its findings, the court noted that the defendant made <u>false factual representations</u> in its removal petition to support its position that the aggregate damages exceeded $5 million. *Id.*

In calculating awards of costs and fees pursuant to section 1447(c), courts have also routinely held that parties are entitled to fees and costs for <u>all work</u> that was required as a result of a wrongful removal. *See, Husko v. Gearly Electric, Inc.,* 316 F. Supp. 2d 664, 674 (2004). The facts of *Husko* are very similar to the instant matter. In *Husko,* the defendants removed the action to federal court and immediately filed a motion to dismiss. After concluding that the

removal was unreasonable, the court awarded the plaintiff all of its fees and costs, including those incurred as a result of having to oppose defendants' motion to dismiss. *Id.* Citing the language of section 1447(c), the court reasoned that all of the work done by the plaintiff in opposing the motion was done "as a result of removal." *Id.* Perhaps most importantly, the court highlighted the fact that defendants had refused to stipulate to continuing the motion to dismiss until such time that the court ruled on plaintiff's remand motion. The court noted the following:

> Significantly, Plaintiff requested Defendants to stipulate to entering and continuing these additional motions in order to defer briefing until Judge Aspen had ruled on the motion to remand. Defendants refused. . . Defendants cannot now be heard to complain that Plaintiff incurred fees, when Defendants could have avoided those fees by stipulating to a deferral of the briefing schedule. *Id.*

### 2.   *Application To The Instant Matter*

As fully set forth in the preceding sections, Toro had no reasonable basis for removing this action. The facts here are analogous to those of both *Alicea* and *Husko* described above. The face of Fletcher's operative complaint clearly identifies that the matter is properly brought in state court. Toro chose to remove without conducting a simple investigation, which if conducted, would have revealed that the claims sought by Fletcher do not meet the $5 million jurisdictional amount. Toro had all of the pertinent information at its finger tips at the time of removal but chose to ignore it. Not only did it ignore the plain facts, the record establishes that it has attempted to mislead the court with blatantly false calculations. Toro also unbelievably contends that there are "multiple" California locations at issue despite that it maintains only one assembly-line in California. RJN Ex. "1" at pg. 18; Opposition at 1:19-20, 1:26-2:1, 10:23, 11:4-6, 11:10 and 16:22-23.

Fletcher also unequivocally requested that Toro stipulate to continue the hearing date on its motion to strike until after this Court's ruling on Fletcher's motion to remand. On December 23, 2008, Fletcher's counsel sent an email to Toro's counsel requesting that it stipulate to continue its hearing date and briefing schedule on the motion to strike since Fletcher intended to file a motion to remand. *See* Exhibit "3" to the Declaration of Cary A. Kinkead. The following day, December 24, 2008, counsel spoke via telephone and Fletcher's counsel again

1  requested that Toro allow the court to determine its jurisdiction prior to the motion to strike.
2  *See*, Kinkead Declaration, paragraph 7. Despite these requests, Toro's counsel refused to
3  continue the motion to strike until after the hearing on Fletcher's motion to remand. *See*, Exhibit
4  "4" to Kinkead Declaration.

5  Fletcher specifically advised Toro's counsel that he would seek all fees and costs incurred
6  in opposing the motion to strike if Toro did not stipulate to the continuance. *See*, Exhibit 4 to
7  Kinkead Declaration. On December 29, 2008, the same day Fletcher filed his remand motion,
8  Toro's counsel replied, again denying Fletcher's request to continue the hearing date until after
9  the Court ruled on Fletcher's motion to remand. As a result, Fletcher was forced to oppose the
10 motion to strike which is scheduled to be heard concurrently with this motion.[4]

11 The removal was brought in bad faith and was compounded by Toro's immediate filing of
12 a motion to strike, which motion Toro has forced Fletcher to spend considerable time opposing.
13 Regrettably, Toro further acted in bad faith by refusing to continue its hearing date and briefing
14 schedule on the motion to strike until after this Court ruled on Fletcher's motion to
15 remand. Thus, as articulated by the court in *Husko*, Toro cannot now complain about the fees
16 incurred by Fletcher because it could have avoided those fees by stipulating to continue the
17 hearing date and briefing schedule.

18 ### 3. *Fletcher Is Entitled To Fees And Costs In The Amount Of $68,433.75*

19 Fletcher has incurred a total of $68,433.75 in fees as a result of Toro's improper removal.
20 *See*, Kinkead Declaration, Paragraphs 2-3. This amount is an accurate reflection of Fletcher's
21 counsel's actual time spent in conjunction with the following: (1) review/research Toro's removal
22 papers; (2) research/prepare motion to remand; (3) review/research Toro's opposition to motion

---

[4] Toro's refusal to postpone its motion to strike was likely due to the fact that it would be unable to file this motion in state court given the California Supreme Court's current review of the *Brinker* action. As explained in Fletcher's opposition to the motion to strike, the remaining state level appellate decisions would preclude Toro's arguments. Toro instead relies on federal decisions that were rendered prior to the California Supreme Court's decision to review Brinker, and asks the court to ignore the pending review in *Brinker*. While Toro's arguments fail for all of the reasons explained in opposition to the motion to strike, it can present them in federal court given that state appellate decisions are persuasive but not binding on federal courts. It could not, however, even present these arguments in state court given the current state of the law and the fact that the remaining citeable state appellate decisions preclude Toro's arguments. *See Bufil v. Dollar Financial* (2008) 162 Cal.App.4th 1193, 1204-1209 (reversing trial court's refusal to certify class of employees denied rest and meal periods); *Cicarios v. Summitt Logistics* (2005) 133 Cal.App.4th 949, 962-963.

HARRISON PATTERSON O'CONNOR & KINKEAD LLP
402 West Broadway
29th Floor
San Diego, CA 92101

to remand; (4) prepare reply to Toro's opposition to motion to remand; (5) review/research Toro's motion to strike; (6) prepare opposition to Toro's motion to strike; and (7) conduct/prepare communications with Toro's counsel regarding scheduling of motions. Fletcher's counsel expects to spend additional time related to the following: (1) preparation and attendance for oral argument on motion to remand, if necessary; and (2) preparation and attendance for oral argument on Toro's motion to strike. *See,* Kinkead Declaration, Paragraphs 2-3.

## II. CONCLUSION

As the "master of his complaint," Fletcher is "not obligated to overstate [his] damages to satisfy the defendant's interest in a federal forum, but may plead conservatively to secure a state forum." *Lowdermilk,* 479 F.3d at 1003. The alleged class is limited to assembly-line operators, and it appears that Toro maintains only one assembly line in California. It further appears that Toro has employed less than 140 assembly-line operators in California during the Class Period. The assembly-line operators are relatively low wage employees that are seeking additional compensation for missed rest and meal periods, unpaid overtime, and associated penalties. Fletcher submits that this is exactly the type of case that the Legislature intended to keep out of federal court by placing the $5 million threshold on federal jurisdiction under CAFA. If this case can be removed, every California wage and hour class action could end up in federal court.

Toro had no objectively reasonable basis to remove this case to federal court under any legal standard, much less based on a "legal certainty" that the amount in controversy exceeds $5 million. Toro's motivation in removing the case based on patently false assumptions and calculations was to secure a forum that it perceives to be more favorable for deciding its currently pending motion to strike Fletcher's class allegations for missed rest and meal periods. Toro's refusal to even allow this motion to remand to be determined prior to its motion to strike removed any doubt that this was the motivation. Accordingly, the Court should award Fletcher his reasonable costs and fees incurred as a result of Toro's improper removal.

Dated: January 23, 2009          HARRISON PATTERSON O'CONNOR & KINKEAD LLP

By: ___/s/ James R. Patterson___
James R. Patterson
Attorneys for the Plaintiff and the Class